*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                :

RICHARD BEESE                      :
                                :
             Plaintiff,          :
                                :         Case No. 11-7505(FLW)
          v.                     :
                                :              **OPINION**
MERIDIAN HEALTH SYSTEM INC., *et al.* :
                                :
            Defendants.       :
_____ :

**WOLFSON, United States District Judge:**

Plaintiff Richard Beese ("Plaintiff" or "Beese") filed an Amended Complaint against Defendants Marybeth Kady ("Kady"), Debra Medler ("Medler"), Meridian Health Systems, Inc. ("Meridian"), and Ocean Medical Center ("OMC") (collectively, "Defendants"), asserting claims of a violation of the Family and Medical Leave Act ("FMLA"), and the New Jersey Law Against Discrimination ("NJLAD"), arising out of his termination from his employment with Meridian. Following discovery, Plaintiff filed a motion for partial summary judgment as to Meridian and OMC; Defendants then filed a separate motion for summary judgment on all claims. For the reasons that follow, the Court denies Plaintiff's motion, and grants Defendants' motion in its entirety.

## BACKGROUND

The following facts are drawn from the parties' L. Rule 56.1 Statements of Facts, and are

undisputed by the parties unless otherwise noted.[1]  Plaintiff was hired by Meridian as an x-ray

technician in January 2008.  Pl. Resp. Facts, ¶ 1.  In that capacity, Plaintiff worked primarily at the

Ocean Care Center, a 24-hour satellite emergency room at OMC, itself part of Meridian, until his

involuntary termination on October 7, 2010.  *Id.* at ¶¶ 2-6.  As a full-time x-ray technician, Plaintiff

worked three overnight shifts per week as the sole technician on duty.  *Id.* at ¶¶ 8-9.  His immediate

supervisor was Medler, the supervisor of radiology, who was in charge of scheduling technicians

such as Plaintiff, as well as ensuring their competent performance in their job duties.  *Id.* at ¶¶ 7,

10.  Medler reported to Kady, the manager of emergency services, for personnel matters, and thus

Kady served as Plaintiff's administrative supervisor who was in charge of ensuring that Plaintiff

complied with Meridian's employment policies, *e.g.*, time and attendance requirements.  *Id.* at ¶¶

11-12.

Meridian employs a progressive, four-step disciplinary system for its employees.  *Id.* at ¶¶

13-14.  As relevant here, if an employee fails to perform his job responsibilities adequately, or

commits certain other violations of his department's or Meridian's policies, that employee may

receive, at the discretion of the employee's supervisor, a "Level I" infraction, which involves a

formal, written notice of discipline stating the basis for discipline.[2]  *Id.* at ¶ 15.  A second Level I

infraction within twelve months results in another disciplinary warning.[3]  *Id.* at ¶ 16. If, within

---

[1]     For reasons unknown to the Court, and contrary to the Court's instructions, the parties filed separate summary judgment motions, each with their own sets of papers, including statements, counterstatements, and responsive statements of material facts.  There is extensive overlap and redundancy between these papers; accordingly, I refer only to the statements of facts filed in connection with, and in response to, Defendants' motion. *See* Dkt. Nos. 22-2 (Defendants' Facts), 23-1 (Plaintiff's Resp. Facts), 23-2 (Plaintiff's Counter. Facts), 25-1 (Defendants' Resp. Facts).

[2]     More serious violations of Meridian's employment policies result in "Level II" infractions, but these are not relevant to the instant matter.

[3]     Plaintiff disputes whether the supervisor *must* issue the second—or, for that matter, any— disciplinary warning, or whether the supervisor retains discretion to do so.  Pl. Resp. Facts, ¶ 16. I address this argument in more detail, *infra*.  Nevertheless, it is undisputed that when a supervisor

twelve months of that second discipline, the employee receives a disciplinary warning as the result of a third Level I infraction, the employee is placed on probation and is given a final warning, notifying the employee that another Level I infraction incurred within twelve months of the third disciplinary warning will result in the immediate termination from his employment with Meridian. *Id.* at ¶¶ 17-18.  Because of the progressive, escalating nature of Meridian's disciplinary policy, the passage of twelve months from receipt of a disciplinary warning expunges the disciplinary record, meaning that any Level I infraction incurred by the employee more than twelve months after a previous Level I infraction would result in the employee beginning the entire Level I disciplinary process again from the beginning, should the supervisor exercise her discretion to issue such a disciplinary warning.

Plaintiff was fired as a result of this disciplinary policy.  *Id.* at ¶ 65.  Plaintiff received his first Level I discipline in October 2008, based on a failure to adequately preform his job responsibilities.  *Id.* at ¶ 19, 31.  In April 2009, less than 12 months later, Plaintiff was disciplined for a second Level I infraction for excessive absenteeism for six unplanned absences.  *Id.* at ¶ 20, 33. Plaintiff received a third Level I discipline in March 2010, which constituted his final warning, placing him on probation (the "Final Warning").  *Id.* at ¶¶ 36-37.  The Final Warning set forth the following reason for a Level I disciplinary action: "Excessive absenteeism and failure to provide adequate notice of an unscheduled absence," describing that "[Plaintiff] was out on PTU[4] on 5/30/09, 5/31/09, 11/20/09, and 3/16/10.  On 3/16/10 [Plaintiff] did not give two hours notice of

---

issues a second disciplinary warning within twelve months of the previously issued discipline, the employee progresses to the next step in the Level I disciplinary process.

4       Meridian defines PTU as an "unscheduled/unpaid absence."  *See, e.g.*, Dkt. No. 22-4, Ex. 8 (Meridian Health Team Member Handbook), at BEESE000349.

absence."[5]  *Id.* at ¶ 36.  However, Defendants admitted later that (i) Plaintiff's leave on November 20, 2009, referenced in the Final Warning, was protected FMLA leave that should not have counted toward his absences, and (ii) without the inclusion of the November 20 leave, Plaintiff would not have been disciplined for absenteeism.  *See* Def. Facts, ¶¶ 38, 42.  On October 7, 2010, following Plaintiff's return from another FMLA leave, Plaintiff received his fourth discipline for a Level I infraction for failure to adequately preform duties as assigned.  *Id.* at ¶¶ 59, 60, 62-64.  Because this discipline fell within twelve months of his Final Warning, Meridian terminated Plaintiff's employment at that same time.  *Id.* at ¶ 65.  It is therefore undisputed that had the Final Warning not been issued, Plaintiff would not have been terminated by virtue of being disciplined on October 7, 2010.

Shortly after his termination from Meridian, Plaintiff filed his Complaint in state court, which Defendants removed to this Court; Plaintiff filed his Amended Complaint on March 3, 2012. In his pleadings, Plaintiff claims that he was terminated in violation of his rights under the FMLA and NJLAD.  In support, Plaintiff primarily asserts that the Final Warning was improperly issued based, at least in part, on Plaintiff's FMLA-protected leave on November 20, 2009.  Because, Plaintiff contends, he would not have received the Final Warning but for the inclusion of an FMLA

---

[5]      With regard to the basis for the failure to give two hours' notice—*i.e.*, failure to properly call out—the following additional facts are undisputed.  Plaintiff testified in deposition that approximately two hours before the start of his shift that day, he telephoned another x-ray technician and left a message asking the technician to "cover" Plaintiff's shift that evening.  *See* Pl. Opp., Supp. Cert., Ex. C (Beese Dep.) at T119:11-T120:20.  Plaintiff had discovered at some point previously a new medical condition and, although Plaintiff was "ready to [go] into work" that day, when the other technician returned Plaintiff's call approximately 40 minutes to 1 hour later, Plaintiff decided to (i) call the current x-ray technician on duty to inform her that he would not be working that evening, but that he had obtained coverage for his shift, and (ii) go to the emergency room for treatment of his medical condition.  *See id.*  In sum, it is undisputed that Plaintiff did not call his employment until approximately an hour before his shift began, and it is further undisputed that Plaintiff never spoke to his supervisor, Medler, or to Kady, to inform them that he was not coming in to work that evening.  *See id.*, *see also id.* at T126:23-T127:2.

4

absence, Defendants interfered with and retaliated against Plaintiff for FMLA protected activity. Similarly, Plaintiff argues that Defendants violated the NJLAD, through issuing the Final Warning, by failing to reasonably accommodate Plaintiff and/or retaliating against him for taking for taking medical leave, which he contends is a protected activity under that statute.  Following the close of discovery, Plaintiff moved for partial summary judgment on both his FMLA and NJLAD claims as to Meridian and OMC, and Defendants also moved for summary judgment on the claims in Plaintiff's Amended Complaint.  On July 9, 2014, the parties appeared before this Court to argue their respective motions, at which time I reserved judgment.  This Opinion sets forth the bases for my decision to deny Plaintiff's motion for partial summary judgment and to grant Defendants' motion for summary judgment.

**STANDARD OF REVIEW**

Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  *See id.* at 252.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-moving] party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The

nonmoving party then carries the burden to "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  Moreover, the non-moving party may not rest upon the mere allegations or denials of its pleading.  *Id.* at 324; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994).  The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  A mere "scintilla of evidence . . . will be insufficient."  *Anderson*, 477 U.S. at 252.

**DISCUSSION**

　　　　Defendants move for summary judgment on all counts of Plaintiff's Amended Complaint. Specifically, Defendants argue that summary judgment in their favor is proper on (i) Plaintiff's FMLA retaliation claim because Plaintiff has failed to establish a *prima facie* case of FMLA retaliation under the *McDonnell Douglas* burden shifting framework, (ii) Plaintiff's FMLA interference claim because it is duplicative of his FMLA retaliation claim, and (iii) Plaintiff's NJLAD claims because Plaintiff has failed to show that he ever sought a reasonable accommodation in connection with his disability.  In response, Plaintiff contends that summary judgment for Defendants is improper because (i) the *McDonnell Douglas* framework is inapplicable to his FMLA retaliation claim, and he has sufficiently shown that he was retaliated against for taking FMLA leave, (ii) he has properly asserted an independent FMLA interference claim, and (iii) he has established *prima facie* violations of his NJLAD claims.[6]  Plaintiff further moves for summary judgment on each of these claims as to Meridian and OMC only.  I analyze each of these claims *in seriatim*.

---

[6]　　　　These arguments are drawn from the parties' motion papers, but also reflect the arguments presented and concessions made at oral argument.

A.      **FMLA Retaliation.**

To prevail on a retaliation claim under the FMLA, a plaintiff must prove that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights.  *See Erdman v Nationwide Ins. Co.*, 582 F.3d 500, 508-09 (3d Cir. 2009).  The threshold issue to Plaintiff's FMLA retaliation claim, however, is determining the applicable legal standard.   FMLA retaliation claims based on circumstantial evidence have been assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), while claims based on direct evidence have been assessed under the mixed-motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276-77 (1989) (O'Connor, J., concurring).  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-302 (3d Cir. 2012).

Under the *Price Waterhouse* framework, when an FMLA plaintiff "alleging unlawful termination presents 'direct evidence' that his [FMLA leave] was a substantial factor in the decision to fire him, the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered [the FMLA leave]." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 147 (3d Cir. 2004).  Conversely, under the *McDonnell Douglas* framework, an FMLA plaintiff has the initial burden of establishing a *prima facie* case by pointing to evidence in the record sufficient to create a genuine factual dispute about each of the three elements of his retaliation claim—*i.e.*, invocation of an FMLA right, termination, and causation.  *Id.* at 146.  To demonstrate a *prima facie* case of causation, the plaintiff must point to evidence sufficient to create an inference that a causative link exists between his FMLA leave and his termination.  *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-81 (3d Cir. 2000).  Once the plaintiff has established this *prima facie* case, the burden of production

shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802.  If the employer meets this minimal burden, the plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve [the employer's] articulated legitimate reasons." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  Thus, a Plaintiff faces a much more onerous burden under the *McDonnell Douglas* framework than under *Price Waterhouse*.  *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d at 301.

Plaintiff, relying on the Third Circuit's decision in *Conoshenti*, argues that his FMLA retaliation claim is based on "direct evidence"—*i.e.*, the Final Warning, which shows on its face that the FMLA violation was a substantial factor in his termination—and thus his retaliation claim is properly analyzed under the *Price Waterhouse* framework.  *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d at 147.  Conversely, Defendants contend that the Final Warning does not on its face indicate that Plaintiff was disciplined for taking FMLA leave.  Instead, Defendants argue that there is an inferential leap which must be made to determine that the November 20, 2009 absence included in in the Final Warning is FMLA-protected leave, and thus the evidence of the FMLA violation is circumstantial evidence and Plaintiff's retaliation claim is properly analyzed under the *McDonnell Douglas* framework.  In that connection, Defendants also question the continued viability of the *Price Waterhouse* standard to *any* FMLA retaliation claim.  I address this latter argument first.

The Third Circuit approved of the application of the *Price Waterhouse* standard to FMLA retaliation claims based on direct evidence in *Conoshenti*.  However, close to a decade later, in *Lichtenstein*, the Third Circuit indicated that following the Supreme Court's ruling in *Gross v. FBL Financial Svcs.*, 557 U.S. 167 (2009), it is an open question whether the direct

evidence/mixed-motive standard set forth in *Price Waterhouse* remains viable.[7]  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d at 302.  The *Lichtenstein* court declined to resolve that question, leaving it for a future case.  Like the *Lichtenstein* court, I need not determine which standard should apply to Plaintiff's FMLA retaliation claim because, as explained *infra*, under even the more lenient *Price Waterhouse* standard, Plaintiff's claim cannot survive Defendants' summary judgment motion.

I begin with Plaintiff's primary evidence of the alleged retaliation in violation of the FMLA—the Final Warning.[8]  The Final Warning set forth two bases for Level I discipline: (i) four absences, one of which, it is undisputed, was an FMLA protected absence, and (ii) a failure to follow departmental call-out procedures.  In that connection, and as previously noted, it is undisputed that Plaintiff would not have been terminated but for the issuance of the Final Warning.  Assuming that the inclusion of the inclusion of the FMLA protected absence in the Final Warning

---

[7]      In *Gross*, the Supreme Court questioned whether Title VII claims were appropriately analyzed under the *Price Waterhouse* standard, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174-75 (2009), thus injecting ambiguity into the continuing validity of *Price Waterhouse* to FMLA claims, given their analytical similarity to Title VII claims.  *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d at 302 & n.25.

[8]      In his initial opposition papers filed with the Court, Plaintiff's arguments focused solely on the Final Warning; however, two days before oral argument, Plaintiff supplied the Court and Defendants with two pages from his opposition brief that he had inadvertently failed to include. In these two pages, Plaintiff argues that his fourth disciplinary warning, which resulted in his termination, was pretextually based on his failure to adequately perform his job duties, but which was actually due to his taking FMLA leave prior to his termination.  It is true that in circumstances where the FMLA protected activity and the alleged retaliatory action occur in close temporal proximity, courts may infer causation.  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d at 307.  However, Plaintiff does not dispute that the reason for the fourth warning—failure to adequately perform job duties—was legitimate.  *See* Pl. Resp. Facts, ¶¶ 44-59 (disputing whether his fourth discipline/termination was pretextual, but not setting forth any contrary facts or evidence to show Plaintiff actually did not perform his job duties adequately on the referenced day).  Thus, even assuming *arguendo* that the timeline Plaintiff relies upon leading up to the fourth warning and his termination could support an inference, it would be improper to infer causation where, as here, it is undisputed that there was a legitimate basis upon which to issue the fourth disciplinary warning and termination.  *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d at 147.

constitutes direct evidence of retaliation for Plaintiff's exercising his FMLA rights, and assuming further that the *Price Waterhouse* standard applies, the burden now shifts to Defendants to prove that they would have fired Plaintiff even if they had not considered his FMLA leave in issuing the Final Warning. *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d at 147.

Defendants contend that the Final Warning would have issued regardless of Plaintiff's absenteeism—*i.e.*, being disciplined for taking FMLA leave. Specifically, Defendants argue that Plaintiff would have incurred a Level I infraction, and would necessarily have been disciplined, for his failure to properly call out on March 16, 2010, and thus this constituted a separate and independent basis for the Final Warning, apart from Plaintiff's absenteeism. In other words, Defendants argue that although it was a mistake to discipline Plaintiff for his absenteeism, Plaintiff would nevertheless have incurred a Level I infraction, and thus received a Final Warning, based on his failure to timely call out from his shift on March 16, 2010. In support of this contention, Defendants rely on the employment guidelines and policies applicable to Plaintiff, as well as deposition testimony and certifications from Kady and Margaret Frucci, Kady's own supervisor. Plaintiff challenges this contention on two grounds. First, Plaintiff argues that a failure to properly call out is not a Level I infraction. Second, Plaintiff argues that even assuming that Plaintiff could be disciplined for failing to properly call out, Meridian supervisors, such as Kady, had the discretion not to actually discipline him, and thus he disputes Kady's testimony that she "would have" issued the Final Warning for Plaintiff failing to call out even if she had not considered his absenteeism.

Meridian provides its employees with several employment documents; relevant here are (i)

the "Meridian Health Team Member Handbook" (the "Handbook"),[9] (ii) the Human Resources Policies & Procedures "Guidelines for Cooperation and Discipline" (the "Guidelines"),[10] and (iii) the Nursing Administration Policy & Procedure "Notification of Absence/Cancellation OMC" (the "Nursing Department Policy").[11]   These collective documents set forth the proper call-out procedure for an unscheduled absence and/or establish the consequences for failing to follow that procedure, as follows.

The Nursing Department Policy provides:

- "Team members *will follow* the call-out/cancellation process when requesting unplanned PTO[12]."  Nursing Department Police, 1 (emphasis added).

- "All nursing team members who are: (a) calling in sick (b) taking unplanned PTO . . . *are required to* notify the Nursing Supervisor." *Id.* (emphasis added).

- "To be eligible for PTU benefits, any team member who is absent due to illness or injury *must* notify their manager and/or Nursing Supervisor at least two hours before the start of his/her regularly scheduled work day." *Id.* (emphasis added).

In that connection, the Guidelines, which apply to all Meridian employees, *see* Guidelines, 1, provide:

- "Team members that exhibit problem behavior . . . should be approached by the

---

[9]    The Handbook is Exhibit 8 to the Certification of Denise M. Maher, Esq., submitted with Defendants' Motion for Summary Judgment.  *See* Dkt. No. 22-4.

[10]    The Guidelines are Exhibit 9 to the Certification of Denise M. Maher, Esq.  *See id.*

[11]    The Nursing Department Policy is Exhibit 11 to the Certification of Denise M. Maher, Esq. *See id.*

Although it is unclear from the record whether Plaintiff worked within the "Nursing Department," or something similar, Plaintiff does not dispute that the Nursing Department Policy applied to Plaintiff during his employment at Meridian.  *See, e.g.*, Dkt. No. 21-7 (Certification of Robert W. Smith, Esq.), Ex. Q (Kady Dep.) at T57:2-T58:1.

[12]    "PTO" is defined as "paid time off."  *See* Dkt. No. 22-4 (Certification of Denise M. Maher, Esq.), Ex. 10 (Human Resources Policies & Procedures "Time Off With Pay: PTO") at 1.

supervisor and the situation discussed with the team member.  It is the supervisor's discretion to discuss the situation with the team member or begin the disciplinary process."  *Id.* at 1 (hereinafter "paragraph three").

The Guidelines further provide, under the heading "Procedure for Level I Infractions":

- "Whenever a team member violates one or more infractions in the same level *and* the supervisor determines that the disciplinary process should be initiated (refer to paragraph three . . .) a team member Disciplinary Notice form is prepared.  The first warning box is checked."  *Id.* at 3 (emphasis added).

- "The second violation of one or more infractions in the same level which occurs within 12 months from the initiation of the first warning *is to be* documented on a team Disciplinary Notice form as a second warning."  *Id.* (emphasis added).

- "The third violation of one or more infractions in the same level which occurs within 12 months from the initiation of the second warning *is to be* documented on a team member Disciplinary Notice form as a final warning and the team member will be placed on probation."  *Id.* (emphasis added).

- "The next violation of one or more infractions in the same level which occurs within 12 months from the initiation of the third (final) warning *is to be* documented on a team member Disciplinary Notice form and will serve as a termination notice to the team member."  *Id.* (emphasis added).

And, under the subheading "Level I Infractions," the Guidelines set forth:

- "Unauthorized and/or unscheduled absence from duty or work location."  *Id.*

- "Failure to comply with department notification requirements in cases of unauthorized absences, illness and/or lateness."  *Id.* at 4.

The Handbook contains policies virtually identical to the above cited policies from the Guidelines. *See generally* Handbook, § 5.11 (PTO), §§ 6.5, 6.7-6.8 (Level I guidelines).

In that connection, Kady and Frucci provided uncontradicted deposition testimony regarding the implementation of these policies. In particular, Kady testified that the reason for the Final Warning was "[e]xcessive absenteeism and failure to apply adequate notice of an unscheduled absence." Kady Dep., T54:4-11. In that regard, Kady testified that she would have issued the Final Warning even without relying on Plaintiff's absenteeism "[b]ecause in addition to excessive absenteeism he failed to provide adequate notice of an unscheduled absence." *Id.* at T56:18-25; *see also id.* at T57:1-3 (Q: "So you would have issued the disciplinary action based on that?" A: "Yes").[13] Moreover, Kady also testified that, in the past, she has *always* issued a Level I discipline based on a failure to properly call out from a shift. *Id.* at T90:20-24 (Q: "Have there ever been instances in which an employee failed to call within that . . . two-hour window and you did not issue discipline?" A: "No."). Similarly, Frucci identified the Nursing Department Policy as "the call out policy" to which Plaintiff was required to adhere, Frucci Dep., T57:2-T59:17, and, furthermore, that the failure to follow that policy would result in a Level I infraction under the Guidelines. *Id.* at T65:25-T68:9 (identifying, *inter alia*, that failure to call out within two hours of a night shift fell within the Level I infraction of "Failure to comply with department notification requirements in cases of unauthorized absence, illness, and/or lateness"). Again, as noted, this deposition testimony, which is consistent with the above cited Meridian employee documents, is

---

[13]     Following her deposition, Kady certified that "[f]ailure to notify the employee's supervisor at least two hours in advance of the scheduled night shift gives rise to Level I discipline for failure to provide adequate notice of an unscheduled absence," Kady First Cert., ¶ 11, and "If Mr. Beese had not been excessively absent, he still would have been written up for a Level I violation for violating the departmental two-hour notification requirement in case of unauthorized absences, illness and/or lateness." Kady Second Cert., ¶ 14.

uncontradicted by Plaintiff.[14]

Similarly, both Kady and Frucci testified that they lacked discretion to not issue the Final Warning under Plaintiff's circumstances.  Specifically, Frucci explained that Meridian's Level I disciplinary process only provides a supervisor with discretion to *initiate* the entire process; once initiated by the issuance of a first disciplinary warning, the policy does not provide the supervisor discretion of whether to issue any subsequent warnings that fall within twelve months of a previously issued warning.  *Compare id.* at T73:24-T74:19 (Q: "[T]here is never a situation where a supervisor has discretion as to whether or not *to start* the progressive discipline process?" . . . A: "Is depends on what the violation is and whether it can be remediated through a verbal discussion." (Emphasis added.)) *with id.* at T73:17-23 (Q: "A supervisor has discretion as to – whether or not to issue discipline for a level one infraction, is that correct?" A: "No." Q: "They don't have discretion." A: "Not if it fits the guidelines that are expressed within the policy.").  *See also id.* at T82:8-12 (Q: "So the supervisor does have discretion whether or not *to begin* the disciplinary process so speak to the employee about a particular infraction, correct?" A: "As I read it here [in the Guidelines], yes." (Emphasis added.)).   Indeed,  the  only  instance  in  which  Frucci acknowledged that a supervisor might be able to exercise discretion to not issue an infraction for failure to call out properly—once the progressive disciplinary process has been initiated—was in

---

[14]     Indeed, Plaintiff does not dispute that failure to comply with departmental notification requirements in cases of unauthorized absences is a Level I infraction. Pl. Resp. Facts, ¶ 24. Rather, he disputes that failure to adhere to the notification requirement of *his* department resulted in a Level I infraction, positing instead that a "failure to call out" only resulted in ineligibility for paid time off benefits. *Id.* at ¶ 25. And, at oral argument, Plaintiff challenged whether the Nursing Policy represented the applicable call out procedure.  Yet, Plaintiff was unable to proffer any evidence in support of his argument or contradicting Defendants' evidence.  Plaintiff's argument is unavailing because, at summary judgment, it is insufficient for the nonmoving party to rely only on argument or pleadings where, as here, the moving party has carried its initial burden. *Celotex v. Catrett*, 477 U.S. at 323-24.  Regardless, as shown by the above cited record evidence, Plaintiff's interpretation of the call-out policy is untenable.

a scenario where the employee was planning to show up for work but, less than two hours before

the start of his shift, needed to go to the emergency room and was physically unable to place a call

to his supervisor or have anyone place the call for him.  *See id.* at T94:7-24 (Q: "In that situation,

you are talking about cutting their hand or some other type of medical emergency where the person

needs to go to the hospital, is it a situation where Meridian would expect the supervisor to exercise

discretion and not issue the discipline and speak with the employee about that?" A: "If the

individual was in their car and cuts their hand on the way to work and said I have to go to the

[emergency room] . . . then maybe that manager would seek discretion to do that.  But it's, again,

their discretion.").[15]

Kady's deposition testimony on the issue of discretion—for example, where someone is

actively receiving medical treatment in an emergency room—corroborates Frucci's responses.[16]

*See* Kady Dep., T87:23-T88:8 (Q: "If someone calls within that two hour time frame . . . do you

have any discretion as to whether or not to issue a discipline, a level one infraction or not?" A: "I

hold all my team members equally accountable." . . . Q: "Do you have any discretion?" A: "I guess,

yes I do."); *see also id.* at T88:22-T89:20 (Q: "So the date [Plaintiff] called out was 3-14?" A:

"Yes." Q: "And . . . he was treated in the emergency room on 3-15, is that correct?" A: "That's the

date is says he was there." Q: "You as his manager . . . [w]ould this be a situation where you might

exercise discretion if someone was in the emergency room and was treated and . . . was not cleared

---

[15]    Even then, Frucci's response followed the initial qualification that the supervisor has discretion to "*initiate* the level one" disciplinary process.  *Id.* at T93:1-4 (emphasis added).

[16]    Following oral argument, Plaintiff submitted a letter to the Court (i) providing additional excerpts from Kady's deposition testimony, some of which is cited above, and (ii) seeking leave for supplemental briefing on the issue of Kady's discretion.  In response to Plaintiff's letter, I informed counsel for all parties that the only material portion of the deposition testimony provided by Plaintiff had already been included in the record, which I had previously reviewed, and thus found that no justification existed for further briefing.

to return to work until 3-18 . . . ?" A: "Not sure." Q: "You're not sure?" A: "I said I could exercise my discretion.").[17]

Indeed, the actual disciplinary process to which Plaintiff was subjected in this case bears out this testimony.  Prior to receiving the first disciplinary warning on October 29, 2008—for failure to adequately preform his job responsibilities—Plaintiff received at least three memoranda from his direct supervisor, Medler, informing him of his poor job performance.  *See* Def. Mot., Ex. 12.  Only after Medler communicated these deficiencies to Plaintiff, apparently without any satisfactory resolution, did Plaintiff receive his first Level I infraction for "failure to perform duties as assigned to a reasonable, satisfactory degree."  *Id.* at Ex. 13.  For the subsequently issued second, third, and fourth disciplinary warnings, which ultimately resulted in Plaintiff's termination, absent from the record is any evidence that Medler, Kady, or Frucci engaged in similar types of communications with Plaintiff prior to the issuance of the discipline.  *Cf.* Kady Dep., T90:7-19 (Q: "Why didn't you ask Mr. Beese what was going on with him on March 15, 2010 [when you issued the Final Warning]? . . . Do you have a recollection as to why you didn't?" A: "No, I don't." Q:

---

[17]     Plaintiff appears to challenge this reading of Kady and Frucci's deposition testimony, instead arguing that the discretion to discipline extends both to initiating the progressive disciplinary process and to the first time a particular infraction is incurred.  In other words, Plaintiff contends that if an employee commits a Level I infraction for failure to properly call out of work, a supervisor always retains discretion to issue a disciplinary warning even if the employee has already received a disciplinary warning within the previous twelve months for another type of Level I infraction, *e.g.*, excessive absenteeism.

     I reject, as illogical, Plaintiff's characterization of Defendants' evidence.  The plain language of the Guidelines only refers to discretion in connection with the first Level I infraction.  Moreover, adopting Plaintiff's view would render Meridian's *progressive* disciplinary process toothless.  Under Plaintiff's construction, an employee could potentially incur ten or even twenty Level I infractions within a twelve-month period but nevertheless not be terminated, because the supervisor allegedly retains discretion, as long as each of those infractions were for a different type of conduct (*e.g.*, absenteeism, inadequate job performance, etc.).  Thus, Plaintiff's contention that Kady and Frucci's deposition testimony raises a genuine issue of material fact is meritless.  No reasonable juror could find that the Guidelines operate in the manner proposed by Plaintiff in light of the undisputed record evidence.

[D]o you think it might have been prudent to ask him why?" A: "No.").

In light of the foregoing, I reject Plaintiff's arguments that his failure to timely call out on March 16, 2010 was not a Level I infraction or that Kady could have exercised discretion to not discipline Plaintiff for that infraction.  As noted, Defendants offered both documentary evidence and testimony from both Kady and Frucci identifying Plaintiff's failure to properly call out on March 16, 2010, as a Level I infraction; Plaintiff, on the other hand, has provided nothing that would allow a reasonable juror to find to the contrary.  Furthermore, Kady and Frucci both testified that, consistent with the plain wording of the Guidelines, a supervisor only has the discretion to initiate the progressive disciplinary policy, and, once initiated, lacks the discretion to issue further disciplinary warnings for Level I infractions except in extreme circumstances, which—it is undisputed—are not present in this case.[18]

By making an undisputed showing that Plaintiff's failure to call out properly forms the basis for a Level I infraction and that, under the circumstances, Kady or any other supervisor lacked discretion to not issue the Final Warning, Defendants have carried their burden on their motion for summary judgment of establishing that Plaintiff would have been terminated even had Kady not taken into consideration Plaintiff's FMLA-protected leave when issuing Plaintiff's Final Warning.[19]  Accordingly, Plaintiff cannot prove that the inclusion of the FMLA-protected leave in

---

[18]    Specifically, Plaintiff does not dispute that he was physically able to call out in a timely manner.  Indeed, as previously noted, Plaintiff was able to, and did in fact, make a phone call approximately two hours before the scheduled start of this shift—specifically, to another x-ray technician for coverage—as well as another call approximately an hour later to the x-ray technician on duty.  *See supra*¸ Footnote 5.  Thus, this is not the scenario where an employee was prevented from making a timely phone call; rather, it is clear from Plaintiff's deposition testimony that he simply chose to follow his own call out procedure, not those set forth in the Nursing Department Policy or Guidelines.  *See, e.g.*, Beese Dep., T120:3-14 (noting that he followed "common practice" to call out, but still had to explain to Kady what this common practice entailed).
[19]    To be sure, if Kady and/or Medler always retained discretion on whether to issue discipline, a different result would attend.  Under that circumstance, Kady's testimony that she "would have"

the Final Warning caused his termination, and thus, cannot establish an FMLA retaliation claim.[20]

*Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d at 147.

Although I have analyzed Plaintiff's FMLA retaliation claim under the *Price Waterhouse* direct evidence/mixed-motive framework, Defendants would also be entitled to summary judgment under the more favorable *McDonnell Douglas* standard.  To prove an FMLA retaliation claim under *McDonnell Douglas*, Plaintiff must first carry his initial burden of proving a *prima facie* case: "(a) invocation of an FMLA right, (b) termination, and (c) causation." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d at 302.  I have already determined that, in light of the applicable employment policies as well as Kady and Frucci's uncontradicted deposition testimony, Plaintiff cannot show that the inclusion of the FMLA-protected leave in the Final Warning caused, or "hastened," his termination because he would have received the Final Warning on the basis of

issued the Final Warning even had she not considered Plaintiff's FMLA-protected leave would raise questions of credibility, as Plaintiff contends, sufficient to preclude summary judgment. However, as discussed above, that is not the case here.  Because the plain language of Meridian's disciplinary policy, and Kady and Frucci's testimony consistent with that policy, reveals that Kady had no discretion to issue the Final Warning based on Plaintiff's failure to properly call out—since this was not the "initiation" of the disciplinary process, *i.e.*, the first disciplinary warning in a twelve-month period—there is no credibility issue.

[20]     Beyond the Final Warning, the only other basis Plaintiff puts forth for an FMLA retaliation claim is the timing of the issuance of his fourth disciplinary warning, *i.e.*, the warning that caused his termination.  Plaintiff contends that the "real reason" for the fourth warning was because he took FMLA leave, not the stated reason of failure to perform duties as assigned.  Without much argument in support, Plaintiff sets forth the timeline between the date for which Plaintiff was disciplined on August 16, 2010, and the actual issuance of his disciplinary warning on October 5, 2010.  Citing an unpublished case from this district, Plaintiff appears to rely on this timeline of events to demonstrate that the time of the retaliatory action is "unduly suggestive of a retaliatory motive," and thus a causal link should be inferred.  *See Champion v. Spencer Gifts, LLC*, Civ. No. 08CV689NLHKMW, 2009 WL 3131461, at *6 (D.N.J. Sept. 24, 2009).  Although in the present case, the undisputed facts show that the decision to terminate Plaintiff occurred while we was out on FMLA leave, it is also undisputed by Plaintiff that Defendants had a legitimate basis to issue the fourth warning, *i.e.*, he failed to perform his duties as assigned.  Accordingly, for the same reasons that Plaintiff cannot establish causation with respect to the Final Warning, he cannot show that the timing of issuance of the fourth discipline and his termination was based on his taking FMLA leave.  *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d at 147.

his failure to properly call out alone.  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d at 311 ("The question is not whether UPMC discharged Lichtenstein for absenteeism and tardiness; the question is whether Lichtenstein's FMLA-qualifying leave on January 3rd was a 'negative factor' that hastened her termination. (Citing 29 C.F.R. § 825.220(c))).  Thus, Plaintiff has failed to make the necessary *prima facie* showing of retaliation under *McDonnell Douglas*.  *See id.* at 302.

### B.     FMLA Interference

Plaintiff also asserts an FMLA interference claim based on the same facts underlying his FMLA retaliation claim—*i.e.*, the inclusion of FMLA-protected leave in the Final Warning that resulted in his ultimate termination.  When employees invoke rights granted under the FMLA, employers may not "interfere with, restrain, or deny the exercise of or attempt to exercise" these rights.  29 U.S.C. § 2615(a)(1).  In that connection, the Third Circuit has held that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee."  *Erdman*, 582 F.3d 509; *see also Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) ("An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.").  Nevertheless, Plaintiff's FMLA interference claim must fail because, as with his FMLA retaliation claim, Plaintiff cannot demonstrate that the alleged interference— the Final Warning and resulting termination—was caused by his taking FMLA leave.  To reiterate, I have established that Plaintiff has no viable FMLA retaliation claim because Defendants have shown that the Final Warning would have issued even without reliance on the FMLA absence.  Thus, this inclusion of an FMLA protected absence in a disciplinary warning, which is the sole basis for Plaintiff's interference claim, is insufficient to show that Defendants actually interfered

with Plaintiff's FMLA rights.

Moreover, appellate courts have affirmed dismissal of an FMLA interference claim where it is based on the same facts, and thus duplicative of, a separately asserted FMLA retaliation claim. *Lichtenstein*, 691 F.3d at 314 n.25 (citing cases).  As noted above, a review of Plaintiff's Amended Complaint and his arguments in connection with the summary judgment motions reveals that Plaintiff's retaliation and interference claims are identical, both based on the Plaintiff being disciplined, via the Final Warning, having taken a protected FMLA absence.  Plaintiff has not pointed to facts that would show any other form of interference, *e.g.*, being denied leave or being told that taking leave would have negative repercussions on his employment.  Accordingly, even assuming *arguendo* that Plaintiff's failure to offer proof of causation is insufficient to grant Defendants' summary judgment motion on the FMLA interference claim, I would nevertheless I find it appropriate to treat Plaintiff's interference claim as identical to his retaliation claim and dismiss it as duplicative.  *Atchison v. Sears*, 666 F. Supp. 2d 477, 489 (E.D. Pa. 2009) ("Atchison's interference claim is identical to his retaliation claim, and premised on the same allegation that Sears took adverse employment action against him because he requested FMLA leave. He cannot escape the *McDonnell Douglas* analysis to prove his case merely by affixing an 'interference' label to one of his duplicative claims. Thus, Atchison's FMLA violation allegations should be analyzed as a retaliation claim."); *Yamamoto v. Panasonic Corp. of N. Am.*, Civ. No. 12-2352 JLL, 2013 WL 3356214, at *11 (D.N.J. July 2, 2013) ("[T]he interference and retaliation claims at issue here are redundant. Indeed, the premise of both claims is that Defendant wrongfully terminated Plaintiff when she returned from FMLA leave.").  Thus, for the same reasons as in connection with Plaintiff's FMLA retaliation claim, Defendants have shown their entitlement to summary judgment on Plaintiff's FMLA interference claim.

C.    NJLAD

Lastly, Defendants move for summary judgment on Plaintiff's NJLAD accommodation and retaliation claims, arguing that Plaintiff failed to demonstrate, as required by the NJLAD that he sought to engage in the interactive process and/or request reasonable accommodations for which he was denied.  Plaintiff's NJLAD claims, like his FMLA claims, also turn on the issuance of the Final Warning and his resulting termination.  Specifically, Plaintiff argues that Defendants failed to accommodate him, and in fact retaliated against him, for the absences which were included in the Final Warning.  In response, Defendants do no dispute that each of the absences included in the Final Warning—*i.e.*, both the FMLA protected absence as well as the other three identified absences—are "protected absences" under the NJLAD; however, Defendants contend that simply taking medical leave, without more, is insufficient to support either a failure to accommodate or retaliation claim under the NJLAD.

An NJLAD claim for failure to provide a reasonable accommodation requires proof that the plaintiff (1) had a NJLAD handicap; (2) was qualified to perform the essential functions of the job, with or without accommodation; and (3) suffered an adverse employment action because of the handicap.  *Bosshard v. Hackensack Univ. Med. Ctr.*, 345 N.J. Super. 78, 91 (2001).  Similarly, a NJLAD retaliation claim requires plaintiff to demonstrate a *prima facie* case of the following elements: (1) the plaintiff belonged to a protected class; (2) the plaintiff engaged in protected activity, which was known to the employer; (3) the plaintiff was subjected to an adverse employment consequence; and (4) a causal link between the protected activity and the adverse employment consequence.  *Victor v. State*, 203 N.J. 383, 409 (2010).  In analyzing either type of NJLAD discrimination claim, I follow the *McDonnell Douglas* burden shifting framework, *see*

*Battaglia v. United Parcel Serv., Inc.*, 214 N.J. 518, 546 (2013) ("All LAD claims are evaluated in accordance with the United States Supreme Court's burden-shifting mechanism." (Citing *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-804.)); *accord Boles v. Wal-Mart Stores, Inc.*, Civ. No. 12-1762 JLL, 2014 WL 1266216 (D.N.J. Mar. 26, 2014), which, as noted above, places the burden on Plaintiff to first prove his *prima facie* case.

Plaintiff relies on the Final Warning as a basis for his NJLAD retaliation claim, arguing that being disciplined for taking excessive leave, which ultimately resulted in his being terminated, shows that he was retaliated against for engaging in a protected activity.  Like with Plaintiff's FMLA retaliation claim, Plaintiff's argument is misplaced.  The undisputed record evidence shows that Plaintiff would have received the Final Warning even if Kady had not considered Plaintiff's absences in determining whether Plaintiff should have been disciplined; thus, Plaintiff cannot show that he suffered an adverse employment activity *because of* having engaged in that protected activity.  *Bosshard v. Hackensack Univ. Med. Ctr.*, 345 N.J. Super. at 91.   Accordingly, Defendants' motion is granted on Plaintiff's NJLAD retaliation claim.

Similarly, Plaintiff has failed to make out a *prima facie* failure to accommodate claim under the NJLAD because Plaintiff cannot prove that (i) he requested an accommodation or (ii) he suffered an adverse employment action because of an NJLAD protected activity.  Again, Plaintiff bases his failure to accommodate claim on the Final Warning, and, specifically, the inclusion therein of NJLAD protected absences.  First, it is undisputed that Plaintiff's leave of absences mentioned in the Final Warning constitute protected activity under the NJLAD and, further, that temporary leaves of absences are a form of reasonable accommodation.[21]  *See* NJ. Admin. Code

---

[21]     Initially, Defendants argued that the taking of medical leave was not a reasonable accommodation under NJLAD; at oral argument, Defendants retreated from this position.

13:13–2.5(b)(1)(ii); *see also Santiago v. Cnty. of Passaic*, Civ. No. A-3599-06T1, 2009 WL 483159, at *5 (N.J. App. Div. Feb. 27, 2009) (observing that New Jersey courts "have indicated that a leave of absence may constitute a reasonable accommodation under the [NJ]LAD.") (citing cases); *Boles v. Wal-Mart Stores, Inc.*, 2014 WL 1266216, at *8 (same).

Nonetheless, in order to bring an NJLAD failure to accommodate claim, an employee "must make clear that . . . assistance [is desired] for his or her disability." *Tynan v. Vicinage 13 of Superior Court*, 351 N.J. Super. 385, 400 (App. Div. 2002); *see also Jones v. United Parcel Service*, 214 F.3d 402, 408 (3d Cir. 2000) (quoted in *Tynan*, *supra*).  Although it is undisputed that Plaintiff took leaves of absences in connection with medical issues, nothing in the record indicates that Plaintiff ever made clear that he required an accommodation to Meridian's leave policy in the form of leaves of absence in excess of what was otherwise allowed to him.  Put differently, although it is undisputed that Plaintiff requested, and took, leave for protected medical reasons on several instances, Plaintiff has not shown that he ever sought an accommodation from Meridian for additional leave, in order to avoid being disciplined for violating Meridian's excessive absenteeism policy.  Nothing in the record shows that Meridian was, or should have been, aware that Plaintiff's medical leave required an accommodation of additional leave beyond that which was already provided to him.  Indeed, the several days of leave for which Plaintiff received the excessive absenteeism Level I infraction concerned separate and distinct issues; thus, the circumstances were not such that Defendants should have been aware that Plaintiff required

---

Additionally, I note that Plaintiff, in an underdeveloped argument, suggests that being disciplined for failing to call out constitutes a failure to accommodate under the NJLAD, where it is undisputed that the reason Plaintiff failed to call out was due to an NJLAD protected activity. This argument is meritless because, as noted earlier, Plaintiff does not dispute that he physically was able to call out in a timely manner.  Thus, Plaintiff did not engage in a protected activity when he failed to call out properly.

accommodation for a chronic, ongoing illness.  For these reasons, I determine that the undisputed record evidence shows that Plaintiff failed to demonstrate that Defendants were made aware that he required "assistance" for his disability in the form of additional leaves of absence.  *Utley v. Bd. of Review, Dep't of Labor*, 194 N.J. 534, 554 (2008) ("Claimant never informed his employer that he would be unable to work the new shift hours *because of* his handicap.  Consequently, his request for leave did not implicate the requirement that his employer make an accommodation." (Emphasis added.)).  For this reason alone, Plaintiff's NJLAD failure to accommodate claim fails.  *See Tynan*, *supra*.

Moreover, Plaintiff's accommodation claim fails for the additional reason that he cannot prove the element of causation.  It is true that, had Plaintiff been issued the Final Warning based solely on taking leaves of absences, there could be a question as to whether those absences were a reasonable accommodation and, whether being disciplined for those absences constitutes an adverse employment action.  *See Victor v. State*, 203 N.J. at 423 ("[A] reasonable accommodation refers to the duty of any employer to attempt to accommodate the physical disability of the employee, not to a duty on the part of the employer to acquiesce to the disabled employee's requests for certain benefits or remuneration." (Internal quotation marks omitted.)); *Victor v. State*, 401 N.J. Super. 596, 616 (App. Div. 2008), *aff'd in part, modified in part*, 203 N.J. 383 (noting that noneconomic actions that cause a significant, non-temporary adverse change in employment status or the terms and conditions of employment would suffice" to show an adverse employment action).  However, that is not the case here, where the undisputed facts show that Plaintiff would have been disciplined without regard to his NJLAD protected absences.  Thus, as with his other claims, Plaintiff cannot show "a causal link between the protected activity and the adverse employment consequence."  *Victor v. State*, 203 N.J. at 409.  Accordingly, summary judgment is

granted in Defendants favor on Plaintiff's NJLAD failure to accommodate claim.

**D.     Plaintiff's Motion**

Plaintiff also moves for summary judgment on each of his claims against Meridian and OMC.   As evidenced by the foregoing discussion, because I grant Defendants' motion, I deny Plaintiff's motion.

**CONCLUSION**

For the reasons stated in this Opinion, the Court grants Defendants' motion for summary judgment in its entirety, concluding that Plaintiff has failed to establish *prima facie* claims of (i) FMLA retaliation, (ii) FMLA interference, (iii) NJLAD retaliation, and (iv) NJLAD failure to accommodate.   For the same reasons, the Court denies Plaintiff's motion for summary judgment on these same claims as to Meridian and OMC.

An appropriate Order shall follow.

Date: July 16, 2014                                    /s/ Freda L. Wolfson
                                                                Freda L. Wolfson, U.S.D.J.